UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

SPARTAN SPECIALTY FINANCE I SPV, LLC,

Chapter 11

Case No. 16-B-22881 (RDD)

Debtor.

------------------------------------------------------------x

## STIPULATION AND AGREEMENT RESOLVING DEBTOR'S MOTION FOR USE OF CASH COLLATERAL AND FIXING AMOUNT OF SECURED CLAIM

This Stipulation and Agreement (the "Agreement") is by and among, Hamilton Funding 1 LP ("Hamilton"), Spartan Specialty Finance I SPV, LLC ("Debtor") and Barry Kostiner, individually ("Kostiner"). The parties hereby enter into the Agreement to, among other things, fully and finally settle and resolve certain disputes and claims by and among them, including, without limitation, regarding Debtor's motion for interim use of cash collateral, filed on July 5, 2016 (Docket No. 8) (the "Cash Collateral Motion") and the amount, nature, and repayment of Hamilton's secured claim, all as expressly set forth herein pursuant, and subject, to the terms hereof. Capitalized terms used herein but not otherwise defined shall have the meaning set forth in the Loan and Security Agreement, dated as of October 31, 2015, a copy of which was filed with this Court as Docket No. 8-1; pps. 8-88 (the "LSA").

## RECITALS

**WHEREAS**, Hamilton, Debtor, and FinTech Asset Management LLC entered into the LSA, and together with all documents, agreements, and security filings entered into or filed in connection therewith, the "Loan Documents", whereby, *inter alia*, Hamilton agreed to provide

Debtor a delayed draw term loan facility providing a minimum loan amount of $7,000,000.00 and up to a maximum loan amount of $10,000,000.00, all in accordance with the terms thereof;

**WHEREAS**, in connection with the LSA, Kostiner was an Indemnity Guarantor to certain provisions in the LSA;

**WHEREAS**, Hamilton made loan advances to Debtor pursuant to the LSA totaling $3,274,629.00;

**WHEREAS**, on February 23, 2016, Hamilton declared an Event of Default under the LSA for, among other things, Debtor's failure to replace Defaulted Receivables in accordance with Sections 7.2(d) and 10.1(x) of the LSA;

**WHEREAS**, pursuant to Section 10.2(b)(i) of the LSA, Hamilton demanded acceleration of payment of all Obligations under the LSA, and sought total payment from Debtor in the amount of $4,437,700.17, including: (i) $3,274,629.00 in unpaid principal; (ii) $41,842.00 in interest due from February 1, 2016 through February 23, 2016; (iii) $524,515.65 in accrued and unpaid interest pursuant to Section 6.3(b)(i) of the LSA; and (iv) a non-use fee of $596,713.52 under Section 2.3 of the LSA;

**WHEREAS**, by letter dated March 24, 2016, the Debtor disputed Hamilton's declaration of a default under the LSA, disputed the amounts set forth in Hamilton's demand, and indicated that unless the default was rescinded that it deemed Hamilton in breach of such agreement;

**WHEREAS**, Debtor made payments to Hamilton between March 3, 2016 and June 6, 2016 totaling $1,392,078.98;

**WHEREAS**, as of June 6, 2016, Hamilton alleges that $3,045,621.19 remained due and outstanding from Debtor (the "Outstanding Amount"), which amount the Debtor disputes;

{00299619.DOCX; 23}813733-2

2

**WHEREAS**, on June 29, 2016 (the "Petition Date"), Debtor filed a voluntary petition for bankruptcy under the United States Bankruptcy Code (the "Bankruptcy Case");

**WHEREAS**, on July 5, 2016, Debtor filed the Cash Collateral Motion, seeking to use cash collateral on a monthly basis up to the amount of $153,500.00 per month;

**WHEREAS**, on July 7, 2016, Hamilton filed an objection to the Cash Collateral Motion;

**WHEREAS**, at a hearing on July 11, 2016, the Bankruptcy Court approved Debtor's interim use of $7,500.00 in cash collateral per week to operate its business pending the final hearing and determination of the Cash Collateral Motion;

**WHEREAS**, on July 22, 2016, the Bankruptcy Court entered an order approving Debtor's interim use of cash collateral pending the final hearing and determination of the Cash Collateral Motion;

**WHEREAS,** by Order dated November 18, 2016, the Court extended the prior order to and including December 29, 2016 pending a final hearing; and

**WHEREAS**, Debtor, Kostiner and Hamilton wish to resolve and settle their disputes concerning the Cash Collateral Motion, the Outstanding Amount, and any and all rights and obligations of Hamilton, Kostiner and the Debtor arising from, or in connection with, the Loan Documents and all activities in connection therewith;

**NOW, THEREFORE,** in consideration of the terms, conditions, promises, and covenants set forth in this Agreement, the parties agree as follows:

1. **Effective Date.** This Agreement will become effective upon execution by all parties and approval by the Bankruptcy Court (the "Effective Date").

2. **Loan Documents; Pre-Petition Collateral; No Offsets of Defenses**.

a. As of the Petition Date, (i) the Outstanding Amount and all obligations of the Debtor arising from, under or in connection with the Loan Documents (the "Pre-Petition Obligations") constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms thereof (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), no offsets, defenses, or counterclaims to any of the Pre-Petition Obligations exist, and no portion of the Pre-Petition Obligations is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Obligations constitute an allowed secured claim in the amount of the Outstanding Amount. The Debtor waives, discharges, and releases any right that may otherwise exist (i) to challenge or object to any of the Pre-Petition Obligations, (ii) to challenge or object to the security for the Pre-Petition Obligations, and (iii) to bring or pursue any and all claims, objections, challenges, causes of action, and/or choose an action arising out of, based upon, or related to the Pre-Petition Loan Agreement or otherwise.

b. Debtor acknowledges and agrees that as of the Petition Date, the Outstanding Amount was the balance of the loan(s) provided by Hamilton under the Loan Documents, which Outstanding Amount was and is secured by valid, binding, enforceable, and perfected first-priority liens upon and against all assets of the Debtor, including any cash and cash proceeds generated by any of its assets (the "Pre-Petition Collateral"), and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or

applicable non-bankruptcy law except with respect to any valuation of the collateral under Section 506(a) of the Bankruptcy Code.

    **c.**    Debtor further acknowledges and agrees that it does not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of Hamilton's liens, claims (including, without, limitation, the Outstanding Amount), and/or security interest(s) in the Debtor's assets, which liens are valid, binding, enforceable, and perfected first-priority liens in all of the Debtor's assets and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law except with respect to the value of the Pre-Petition Collateral under Section 506(a) of the Bankruptcy Code.

**3. Settlement Payment.** Debtor shall pay Hamilton as follows:

    **a.**    Debtor shall pay Hamilton $1,000,000.00 (the "Initial Settlement Payment") within two (2) business days of the Effective Date by wire transfer of immediately available funds to Hamilton pursuant to the letter of instruction attached hereto as Exhibit A. The Initial Settlement Payment shall be made from funds maintained in the Debtor's Debtor-in-Possession Account and/or from its account at Cross River Bank that is subject to a Deposit Account Control Agreement with Hamilton or its designee. Upon such payment, the total Outstanding Amount of principal owed by Debtor to Hamilton shall be reduced to $2,045,621.19 (the "Reduced Principal Amount");

    **b.**    Debtor shall pay Hamilton the Reduced Principal Amount in accordance with the terms set forth in this subparagraph b. The Reduced Principal Amount shall bear interest and accrue on and after the Effective Date at the rate of 20% per annum, commencing on the first business day following the Effective Date and continuing until the Reduced Principal Amount, together with all accrued interest to the date of payment(s), has been paid in full or the Final Reduced Payment Amount has been paid by the Reduced Payment Deadline. Notwithstanding the foregoing sentence, if after Hamilton has receive the Initial Settlement Payment, the Debtor shall pay to Hamilton the total additional sum of $1,400,000.00 (exclusive of (i) the Initial Settlement Payment and (ii) the Legal Fees (as defined in paragraph 4 below)) on or prior to the fifteenth (15th) month anniversary of the Effective Date (the "Reduced Payment Deadline"), Hamilton shall accept such $1,400,000 provided the Initial Settlement Payment, the Legal Fees, and such $1,400,000 were paid prior to the Reduced Payment Deadline strictly in accordance with the provisions above (collectively, the "Final Reduced Payment Amount"), as payment in full of (x) the Reduced Principal Amount and (y) any accrued and unpaid interest thereon. For purposes of clarity, in the event the $1,400,000.00 referred to in the immediately preceding sentence has not been paid by the Reduced Payment Deadline, the Debtor shall remain liable to pay Hamilton all accrued and unpaid interest on any unpaid portion of the Reduced Principal Amount until the Reduced Principal Amount has been paid in full.

    **4.**    **Legal Fees.** In addition to the Settlement Payment, Debtor shall pay to Hamilton, within 30 days of the Effective Date, legal fees in the amount of $125,000.00 (the "Legal Fees"),

representing reimbursement of a portion of Hamilton's legal fees and expenses incurred as a result of the actions taken by Debtor to date. Hamilton and the Debtor acknowledge and agree that the payment of Legal Fees shall be funded through the Debtor's Debtor-in-Possession bank account comprising the Cash Collateral, but in addition to all other amounts required to be paid hereunder.

5. **Cash Collateral; Resolution of the Cash Collateral Motion.**

a.  The Debtor acknowledges and agrees that all cash equivalents, whether in the form of cash, accounts generated therefrom, deposits, deposit accounts, or in any other form, whenever acquired, which represent income, proceeds, products, or profits of the collateral under the Loan Documents that are now in the possession, custody, or control of the Debtor (or persons in privity with the Debtor), or in which the Debtor will obtain an interest during the pendency of the Bankruptcy Case (whether generated and collected pre-petition or post-petition) or thereafter, are and shall be treated as the "cash collateral" in which Hamilton has asserted a security interest for the purposes, and within the meaning, of Bankruptcy Code § 363(a) (collectively, the "Cash Collateral"). The Debtor agrees and acknowledges that Hamilton has first-priority perfected liens and security interests in all Cash Collateral pursuant to the applicable provisions of the Loan Documents and in accordance with Bankruptcy Code §§ 361, 363(a), and 552(b). Pursuant to Section 363(c)(3) of the Bankruptcy Code, the Debtor cannot use the Cash Collateral without the consent of Hamilton or without order of the Bankruptcy Court.

**b.** So long as there is no Event of Default hereunder, the Debtor may use Cash Collateral up to the amount of $10,000.00 each month, for a period of six (6) months following the Effective Date (the "Initial Measuring Period"), for the payment of the salaries for employees of the Debtor. If, during the Initial Measuring Period, the Debtor pays $500,000.00 or more to Hamilton (exclusive of payment of the Initial Settlement Payment and Legal Fees, the "Initial Measuring Period Payment"), the Debtor may continue to use Cash Collateral up to the amount of $10,000.00 each month for an additional six (6) months (the "Second Measuring Period"). If, during such Second Measuring Period, the Debtor pays $500,000.00 or more to Hamilton (exclusive of payment of the Initial Settlement Payment, Legal Fees and the Initial Measuring Period Payment), the Debtor may continue to use Cash Collateral up to the amount of $10,000.00 each month for an additional three (3) months (the "Third Measuring Period"). If during the Third Measuring Period, Debtor pays $400,000 .00 to Hamilton, Debtor may use the remainder of the Cash Collateral, if any, as it deems necessary without further consent or approval from Hamilton. No order in the Bankruptcy Case shall authorize any use of Cash Collateral by the Debtor in excess or contrary to this provision.

**c.** In the event of any Event of Default hereunder, Hamilton shall provide ten (10) days' written notice to the Debtor and Debtor's counsel of such Event of Default and right to cure, which upon failure to cure, shall cause the termination of the Debtor's use of Cash Collateral whereupon Debtor's rights to use Cash

Collateral shall immediately terminate irrevocably (unless and until otherwise agreed by Hamilton).

    **d.**    The Cash Collateral Motion shall be marked as "resolved" upon entry of this Agreement, in accordance with the foregoing.

    **6.**    **Default.** An "Event of Default" shall occur under this Agreement if Debtor fails to make any payment required hereunder when due. Following an Event of Default, Hamilton shall be entitled to pursue any and all claims against Debtor, either as part of the Bankruptcy Case, if the Debtor's Bankruptcy Case is still open or can be reopened, or a separate legal proceeding, to recover the full Outstanding Amount plus accrued and unpaid interest and any and all legal fees incurred as a result of the Event of Default, less any principal payments previously made. Debtor hereby unconditionally and irrevocably waives any and all rights to assert any defense, setoff, or counterclaim relating to an Event of Default under this Agreement in the Bankruptcy Case or any other legal proceeding other than actual payment of the Outstanding Amount.

    **7.**    **Loan Servicing.** Within three (3) months after the Effective Date, Debtor shall terminate any existing agreement(s) or arrangement(s) with any loan service provider or collection agency. Debtor agrees to enter into a loan servicing agreement with a loan servicer, reasonably acceptable to Debtor, to service the loans held in Debtor's portfolio. The de-boarding from all present servicers will be on terms and conditions acceptable to Hamilton and all servicing decisions in the future, including, without limitation, settlements and/or write-offs in respect of any instruments constituting collateral, shall be subject to approval of Hamilton acting in its reasonable discretion as secured lender for so long as any portion of the Outstanding Amount remains due and outstanding and the Debtor has not prepaid the Final Reduced Payment

{00299619.DOCX; 23}813733-2

9

Amount prior to the fifteenth (15th) month anniversary of the Effective Date. The cost relating to the change of loan services shall be funded from loan proceeds collected by the loan services provider.

8. **Mutual Releases; Other.** In consideration of the promises herein, the parties hereby release and discharge one another as follows:

a. **Hamilton Release of Debtor.** Upon full payment of all of Debtor's payment obligations set forth in sections 3 and 4 above, Hamilton, and its current and former members, investors, owners, principals, partners, owners, officers, employees, subsidiaries, parents, affiliates, divisions, representatives, agents, attorneys, predecessors, successors, and assigns completely, irrevocably and unconditionally release, remise, discharge, and forever acquit Debtor, as well as its current and former members, principals, partners, owners, officers, employees, subsidiaries, parents, affiliates, divisions, representatives, agents, attorneys, predecessors, successors, and assigns, from any and all claims, causes of action, suits, charges, complaints, controversies, liabilities, damages, actions, costs, losses, debts, accounts, covenants, contracts, agreements, promises, judgments, demands, and expenses and obligations of every nature and description, whether known or unknown, suspected or unsuspected, choate or inchoate, whether in law or equity, whether arising under federal or state law, including, but not limited to, those that were asserted or that could have been asserted in the Bankruptcy Case or any other proceeding or in any other forum, and those which arise from or relate to any dealings the parties may have had with one another from the beginning of time up until the date of this Agreement,

except for any and all claims, causes of action, suits, charges, complaints, controversies, liabilities, damages, actions, costs, losses, debts, accounts, covenants, contracts, agreements, promises, judgments, demands, and expenses and obligations by or relating to claims made by or related to Fund Recovery Services LLC or Argon Credit LLC or any of their successors or assignees or any claims of fraud or misrepresentation (the "Excepted Claims"). Notwithstanding anything to the contrary in this paragraph, Hamilton may (a) enforce the terms of this Agreement pursuant to the dispute resolution provisions in Sections 6 and 12 herein and (b) pursue the Excepted Claims in any manner and any appropriate forum whatsoever.

**b.    Hamilton's Release of Kostiner**. Upon payment of (i) the Initial Settlement Payment and (ii) the Legal Fees, Hamilton and its current or former members, investors, owners, principals, partners, owners, officers, employees, subsidiaries, parents, affiliates, divisions, representatives, agents, attorneys, predecessors, successors and assigns completely, irrevocably and unconditionally release, remise, discharge and forever acquit Barry Kostiner, individually, from any and all claims, causes of actions, suits, charges, complaints, controversies, liabilities, damages, actions, costs, losses, debts, accounts, covenants, contracts, agreements, promises, judgments, demands and expenses and obligations of every nature and description, whether known or unknown, suspected or unsuspected, choate or inchoate, whether in law or equity and those which arise from the beginning of time until the date of this Agreement, except for the Excepted Claims, any act that interferes with or

causes interference or delay of any payments under this Agreement to Hamilton, and any liability under Sections 11.1 and 11.5 of the LSA.

c.      **Debtor Release of Hamilton**. As of the Effective Date, Debtor, and its current and former members, investors, owners, principals, partners, owners, officers, employees, subsidiaries, parents, affiliates, divisions, representatives, agents, attorneys, predecessors, successors, and assigns, including, without limitation, Barry Kostiner, individually, completely, irrevocably and unconditionally release, remise, discharge, and forever acquit Hamilton, as well as its current and former members, principals, partners, owners, officers, employees, subsidiaries, parents, affiliates, divisions, representatives, agents, attorneys, predecessors, successors, and assigns from any and all claims, causes of action, suits, charges, complaints, controversies, liabilities, damages, actions, costs, losses, debts, accounts, covenants, contracts, agreements, promises, judgments, demands, and expenses and obligations of every nature and description, whether known or unknown, suspected or unsuspected, choate or inchoate, whether in law or equity, whether arising under federal or state law, including, but not limited to, those that were asserted or that could have been asserted in the Bankruptcy Case or any other proceeding or in any other forum, and those which arise from or relate to any dealings the parties may have had with one another from the beginning of time up until the date of this Agreement. Notwithstanding anything to the contrary in this paragraph, Debtor may pursue any claims to enforce the terms of this Agreement provided it does so only pursuant to the dispute resolution provisions in Sections 6 and 12 herein.

      **d.**    <u>Other</u>. Debtor and Barry Kostiner, individually, shall indemnify and hold harmless Hamilton and its current and former members, owners, officers, employees, and successors harmless from and against all losses, damages, and expenses of whatever form or nature, including attorneys' fees and costs, that they, or any of them, may sustain or incur as a result of or in connection with any dispute or claims by Fund Recovery Services LLC or Argon Credit LLC, or any of their respective current and former affiliates, members, owners, officers, employees, and successors to the extent relating or attributed to, or on account of, actions by the Debtor and/or Kostiner, respectively.

    **9.**    <u>Approval/Dismissal</u>. The Debtor shall move, within three (3) business days of the execution of this Agreement by Hamilton, move for Bankruptcy Court approval of this Agreement and for dismissal of the Bankruptcy Case with a proposed order that shall provide for the payment (after payment to Hamilton of the Initial Settlement Payment and the Legal Fees) of (i) any unpaid United States Trustee fees, (ii) a 35% distribution to non-insider creditors who file timely claims (who, prior to receiving their respective distribution, must execute an affidavit that they hold non-insider claims) from the Debtor's Cash Collateral, and (iii) subject to submission to Hamilton of invoices by Debtor's counsel for services rendered in connection with the Bankruptcy Case, legal fees to Debtor's counsel up to a maximum of $135,000, to the extent substantiated by such invoices, payable from the Debtor's Cash Collateral. The order shall also provide that this Agreement shall survive the dismissal and remain enforceable pursuant to its terms in all respects.

    **10.**    <u>No Assignment</u>. Each party to this Agreement represents that it has not assigned or transferred any claim it is releasing.

11. **Settlement Agreement Binding and Enforceable.** This Agreement shall be fully binding and enforceable on and shall inure to the benefit of Hamilton and Debtor, and their respective officers, directors, stockholders, agents, employees, managers, attorneys, predecessors, successors, assigns, affiliates, subsidiaries, partners, heirs, executors, administrators, personal representatives, and all other persons, firms, companies, associates, or partnerships.

12. **Governing Law, Dispute Resolution, Jurisdiction.** This Agreement shall be construed and governed for all purposes in accordance with the laws of the State of New York, without regard to principles of conflict of laws or choice of law. Each of the parties hereto consents to the jurisdiction of the Bankruptcy Court to adjudicate any and all disputes arising under or relating to this Agreement as long as the Bankruptcy Case is pending. If the Bankruptcy Case has been closed or the Bankruptcy Court declines to exercise jurisdiction, the Parties agree and consent to the exclusive jurisdiction of the federal and/or state courts sitting in New York, New York to adjudicate any disputes arising under or related to this Agreement, and each party hereto consents to the personal jurisdiction and venue of said courts. The prevailing party in any action brought to enforce the terms of this Agreement shall be entitled to recover the costs and expenses incurred in such litigation, including reasonable attorneys' fees.

13. **Entire Agreement; No Contravention.** This Agreement sets forth the full agreement and understanding between Hamilton and Debtor. This Agreement fully supersedes any prior understandings or agreements, whether written or oral, between the parties regarding the subject matter hereof. Other than the representations specifically set forth in this Agreement, which have been relied upon and are reserved, no representations of any kind have been made to induce any party to execute this Agreement and Hamilton and Debtor covenant and agree not to

sue one another on the ground of fraud, omission, misrepresentation, or any similar ground in connection with the execution of this Agreement. The Debtor shall not seek any relief in this case inconsistent with this Agreement.

14. **Voluntary and Knowing Participation.** Hamilton and Debtor have entered into this Agreement freely and voluntarily, with no duress or coercion, after consulting with independent legal counsel of their own choice and receiving counsel's explanation of each of the terms in this Agreement, and having had an adequate opportunity to make whatever investigation or inquiry such party deemed necessary or desirable in connection herewith. Further, each party agrees to all of the terms of this Agreement, acknowledges that this Agreement is made in good faith and is fair and reasonable, and is fully satisfied with the settlement set forth herein.

15. **Construction.** The terms and language of this Agreement are the result of negotiations between Hamilton and Debtor in consultation with their counsel, and there shall be no presumption that any ambiguities in this Agreement should be resolved against any of the parties. Any controversy concerning the construction of this Agreement shall be decided without regard to authorship.

16. **Modification and Waiver.** No modification of, or amendment to, this Agreement shall be valid unless it is in writing and signed by Hamilton and Debtor. No provision of this Agreement may be waived unless such waiver is in writing, signed by the party to be charged therewith. Waiver of any one provision shall not be deemed to be a waiver of any other provision.

17. **Severability.** If any provision in this Agreement is subsequently declared by any court to be illegal, void or unenforceable, as written, the remaining provisions of this Agreement shall nevertheless remain in full force and effect.

18. **Authority.** Hamilton and Debtor each represent and warrant that they have all necessary power and authority to execute and deliver this Agreement, to consummate its terms, bind Hamilton and Debtor hereto, and to perform all obligations hereunder.

19. **Notice.** For the purposes of this Agreement, notices, demands and all other communications provided for in this Agreement shall be in writing and shall be delivered (i) personally, (ii) by first class mail, certified, return receipt requested, postage prepaid, (iii) by overnight courier, with acknowledged receipt, or (iv) by e-mail followed by delivery by first class mail or by overnight courier, and addressed as follows:

|  |  |
|---|---|
| If to Hamilton: | Hamilton Funding 1 LP<br>Attention: Eliezer Brender<br>250 Park Avenue, 7th Floor<br>New York, NY 10177<br>Email: ebrender@exigentcap.com |
| With a copy to: | Kenneth J. Rubinstein, Esq.<br>Joseph M. Vann, Esq.<br>Cohen Tauber Spievack & Wagner, P.C.<br>420 Lexington Avenue, Suite 2400<br>New York, New York 10170<br>Email: krubinstein@ctswlaw.com;<br>jvann@ctswlaw.com |
| If to Debtor or Barry Kostiner: | Spartan Specialty Finance I SPV LLC<br>Attention: Barry Kostiner<br>85 Horton Drive<br>Monsey, NY 10952<br>Email: bkostiner@fintecham.com |
| With a copy to: | A. Mitchell Greene, Esq.<br>Robinson Brog Leinwand Greene Genovese<br>& Gluck P.C.<br>875 Third Avenue |

New York, New York  10022<br>
Email: amg@robinsonbrog.com

or to such other address or contact as any party may later indicate in writing.

**20.** **Counterparts.** The parties to this Agreement may execute the Agreement in counterparts each of which may be considered an original when executed.  Signatures by facsimile, e-mail, or pdf shall be considered as originals.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement on the day and year first written above

**HAMILTON FUNDING I LP**

By _/s/ Eitan Bunk_

Name: Eitan Bunk
Title: Manager

Executed on: April __, 2017

**SPARTAN SPECIALTY FINANCE I SPV LLC**

By _B. Kostiner_

Name: Barry Kostiner
Title: Manager

Executed on: April 28, 2017

**BARRY KOSTINER, an individual**

_B. Kostiner_

Executed on: April 28, 2017

**SO ORDERED:**

_____
United States Bankruptcy Judge Robert D. Drain

10029961v DOCX 23/813733 2                 18